**Edith BROOKS, Plaintiff–Appellant,**

v.

**TOYOTOMI COMPANY, LTD. and Toyotomi U.S.A., Inc., Defendants–Appellees.**

No. 94–6093.

United States Court of Appeals, Sixth Circuit.

Argued March 12, 1996.

Decided June 17, 1996.

Phillip L. Davidson (argued and briefed), Nashville, TN, for Plaintiff-Appellant.

John D. Ross, John A. Coates (argued and briefed), Neal & Harwell, Nashville, TN, for Defendants-Appellees.

Before: KEITH, MARTIN, and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a product liability case in which judgment was entered on a jury verdict in favor of the defendants. Pursuant to Rule 59(a), Fed.R.Civ.P., the plaintiff filed a timely motion for a new trial. The district court (Echols, J.) denied the motion, whereupon the plaintiff filed a timely notice of appeal.

Although it specified the plaintiff as the party taking the appeal, the notice did not expressly designate the judgment or order appealed from and did not expressly name the court to which the appeal was being taken. Because Rule 3(c), Fed.R.App.P., says that "[a] notice of appeal ... must designate the judgment, order, or part thereof appealed from, and must name the court to which the appeal is taken," we are confronted at the outset with a question as to whether the notice was adequate to confer appellate jurisdiction.

The question is by no means free from doubt, although at least one of our sister circuits would undoubtedly answer that appellate jurisdiction exists here. See *McLemore v. Landry*, 898 F.2d 996 (5th Cir.), *cert. denied*, 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). We shall assume, without so deciding, that this answer is correct. A victory for the plaintiff on the jurisdictional question would be a hollow one, we conclude, because we do not believe that the plaintiff would be entitled to prevail on the merits of her appeal even if our jurisdiction were entirely clear. We shall dismiss the appeal on that basis, allowing the judgment of the district court to stand.

**I**

In November of 1987, according to an amended complaint filed in the federal district court following the removal of this case from a Tennessee state court on diversity grounds, plaintiff Edith Brooks' husband purchased a portable kerosene heater that had been manufactured in Japan by defendant Toyotomi Company, Ltd. The heater was distributed in this country by defendant Toyotomi U.S.A., Inc. The lawsuit arises out of an accident that occurred on January 13, 1990, when Mrs. Brooks alleges that the heater suddenly erupted in flames after she thought she had turned the device off. It is undisputed that Mrs. Brooks was severely burned.

The case went to trial on January 19, 1994, and the jury returned its verdict for the defendants on January 27. Judgment was entered on the verdict the following day.

Arguing that the verdict was against the clear weight of the evidence, Mrs. Brooks moved for a new trial on January 31, 1994. The district court denied the motion on July 25, and the plaintiff filed her notice of appeal in the district court on August 18, 1994. The clerk of that court sent a copy to the United States Court of Appeals for the Sixth Circuit, although this court was not named anywhere in the notice.

■ The body of the notice of appeal read, in its entirety, as follows:

"Comes the plaintiff, Edith Brooks, and submits her notice of appeal in this case."

Although the notice did not expressly designate the judgment, order or part thereof appealed from, a pre-argument statement that the plaintiff filed with this court on September 12, 1994—after the time for filing a notice of appeal had expired—indicated that the plaintiff sought to appeal from the order denying the motion for a new trial. This circuit, like others, treats an appeal from an order denying a new trial as reaching the adverse judgment itself. See *Boburka v. Adcock*, 979 F.2d 424, 426 (6th Cir. 1992), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 682 (1993).

On September 1, 1994 (a date prior to the filing of the plaintiff's pre-argument statement), this court, acting *ex mero motu*, ordered the plaintiff to show cause why her appeal should not be dismissed for lack of a sufficient notice of appeal. The plaintiff filed a timely response in which she argued that the notice was sufficient because the defendants, upon receiving it, must have known (a) that it was the denial of the motion for a new trial from which the plaintiff was appealing, and (b) that it was the United States Court of Appeals for the Sixth Circuit to which the appeal was being taken. The defendants replied that because the requirements of Rule 3 are jurisdictional, failure to comply with them is fatal to an appeal whether or not the appellee has been prejudiced. Upon consideration of the parties' submissions, a

motions panel of the court ordered that the jurisdictional question be referred to the panel assigned to hear the appeal.

## II

Rule 3(c), Fed.R.App.P., requires that a notice of appeal contain three pieces of information: (1) it must specify the party or parties taking the appeal, (2) it must designate the judgment or order being appealed, and (3) it must name the court to which the appeal is being taken. The rule also provides, however, that "[a]n appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice."

■ Where a document filed within the time specified in the rules contains all three of the prescribed elements, the document may be construed as a notice of appeal even though it is not so labeled. See, *e.g.*, *Smith v. Barry*, 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992), *and on remand* 985 F.2d 180 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 207, 126 L.Ed.2d 164 (1993) (appellate brief filed in court of appeals); *United States v. Christoph*, 904 F.2d 1036 (6th Cir. 1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) (motion for extension of time to file notice of appeal); *McMillan v. Barksdale*, 823 F.2d 981, 983 (6th Cir.1987) (application for certificate of probable cause).

In keeping with the spirit of the rules and the letter of the provision regarding "informality of form," the Supreme Court has consistently indicated that it will eschew rigid formalism in determining whether the requirements of Rule 3(c) have been met. Thus in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), where the appellant had filed both a premature notice of appeal from the underlying judgment and a timely notice of appeal that expressly referred to the denial of post-judgment motions but not to the underlying judgment, the Court held that the underlying judgment had been adequately designated:

"The defect in the second notice of appeal did not mislead or prejudice the re-

spondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest." *Id.* at 181, 83 S.Ct. at 229.

The Supreme Court has subsequently made it clear, however, that the principle of liberal construction articulated in *Foman v. Davis* does not vitiate the jurisdictional character of the requirements of Rule 3. See *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988), where one of several losing parties in an employment discrimination suit was not specified as an appellant in the notice of appeal, and the Court held that the failure to name him was "more than excusable 'informality;' it constitute[d] a failure of that party to appeal."

■ The *Torres* Court explained that a litigant may be found to have complied with Rule 3 if he makes a filing which, although technically at variance with the letter of the rule, "is the functional equivalent of what the rule requires." *Id.* at 316, 108 S.Ct. at 2408. But where a litigant has not so much as filed the functional equivalent of a notice of appeal, the appellate court is without jurisdiction. And if the court finds that the jurisdictional requirements of Rules 3 and 4 have not been met, it may not waive the requirements "even for 'good cause shown'...." *Id.* at 317, 108 S.Ct. at 2409.

■ The Supreme Court's opinion in *Smith v. Barry* confirms that while the requirements of Rule 3 will be liberally construed, the principle of liberal construction does not excuse noncompliance; "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." 502 U.S. at 248, 112 S.Ct. at 682.

"[N]oncompliance," in other words, "is fatal to an appeal." *Id.* A filing that is not at least the functional equivalent of what the rule requires is simply not sufficient to confer appellate jurisdiction.

■ Turning to the case at bar, we note that the defendants do not claim to have been misled or prejudiced by the defects in Mrs. Brooks' notice of appeal. The only activity in the case during the 30 days prior to the filing of the notice was the denial of the motion for a new trial, and there was nothing to which a timely notice could logically have pertained other than the denial of the motion and the entry of the underlying judgment for the defendants.[1] The only court to which an appeal could be had, moreover, was the Court of Appeals for the Sixth Circuit—and this was the court to which the clerk of the district court sent a copy of the notice. See Rule 3(d), Fed.R.App.P. ("The clerk of the district court shall forthwith send a copy of the notice and of the docket entries to the clerk of the court of appeals named in the notice"). Had Mrs. Brooks' notice of appeal expressly named the Sixth Circuit as the court to which the appeal was taken, and had the notice expressly designated the denial of the motion for a new trial as the order appealed from, such a notice would not have told the defendants anything they could not readily have inferred anyway.

In a case that presented circumstances directly comparable to those presented here—a case where the notice of appeal neither named the court appealed to nor designated the order(s) appealed from—the Court of Appeals for the Fifth Circuit held the notice of appeal "sufficient, although inartfully drawn." *McLemore v. Landry*, 898 F.2d 996, 999 (5th Cir.), *cert. denied*, 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). As the Fifth Circuit explained,

"River Villa's intent to appeal the underlying summary judgment and denial of its motion to file a compulsory counterclaim may be gleaned from its 'timing' and the status of the case when the 'notice' was filed, as subsequently buttressed by the

---

1. Under Rule 4(a)(4)(E), Fed.R.App.P., the time for Mrs. Brooks' appeal ran from the entry of the order denying her motion for a new trial, that

motion having been filed within the 10–day period fixed by Rule 59(b), Fed.R.Civ.P.

statement of issues and briefs. [Citations omitted.] Further, River Villa's intent to appeal to this court is made manifest by the fact that this is the only court to which an appeal may be had."

It is a pretty safe bet, we think, that the Supreme Court which decided *Foman v. Davis* in 1962 would have embraced the Fifth Circuit's reasoning with enthusiasm.[2] We suspect that Supreme Court which decided *Torres v. Oakland Scavenger* in 1988 and the Supreme Court which decided *Smith v. Barry* in 1992 would have reached the same result, but we make this observation with slightly less confidence.

■ It is now well established that the requirements of Rule 3 are jurisdictional—and, as the *Torres* Court noted, "a litigant's failure to clear a jurisdictional hurdle can never be 'harmless'...." 487 U.S. at 316 n. 3, 108 S.Ct. at 2409 n. 3. Notwithstanding the absence of prejudice, we take it, a defective notice of appeal can never confer jurisdiction on an appellate court unless "the filing is timely under Rule 4 and conveys the information required by Rule 3(c)." *Smith v. Barry*, 502 U.S. at 249, 112 S.Ct. at 682. As we have seen, the litigant's filing must at least be "the functional equivalent of what the rule requires." *Id.* at 248, 112 S.Ct. at 681–82, quoting *Torres*, 487 U.S. at 317, 108 S.Ct. at 2409. And in the case at bar, obviously, one must go outside the four corners of Mrs. Brooks' filing to glean the information required by Rule 3(c). It is not inconceivable to us that this circumstance might be held to negate functional equivalence.

The holding of our court in *Minority Employees v. Tennessee Department of Employment Security*, 901 F.2d 1327 (6th Cir.) (*en banc*), *cert. denied*, 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), seems pertinent in this connection. The notice of appeal at issue in *Minority Employees* specified that "plaintiffs in the above case" were the parties taking the appeal—and, as a practical matter, "no one examining the record could have [had] any possible doubt as to who the 'plaintiffs in the above case' actually were." *Id.* at 1341 (Nelson, J., concurring in part and dissenting in part). The name of only one of the plaintiffs appeared on the face of the notice of appeal itself, however, and the *en banc* court held that the notice did not confer appellate jurisdiction with respect to the remaining plaintiffs. In so holding, the court expressed the view that "*Torres* spoke to factual circumstances concerning the adequacy of a notice of appeal which were broader than those immediately before it." *Minority Employees*, 901 F.2d at 1329.

All three members of the present panel disagreed with the *en banc* court's broad reading of *Torres*, as it happens, and the logic of the majority opinion in *Minority Employees* may have been clearer to the judges who were in the majority than it is to us. We are nonetheless bound to respect the majority's logic, as best we understand it,[3] and it is largely this consideration that prompts us to pretermit the jurisdictional issue.

If we were to hold that appellate jurisdiction exists—and were it not for *Minority*

**2.** "It is too late in the day and entirely contrary to the spirit of the Federal Rules ... for decisions on the merits to be avoided on the basis of ... mere technicalities." *Foman*, 371 U.S. at 181, 83 S.Ct. at 230. Justice Scalia, on the other hand, has expressed some unhappiness with reasoning such as that used in *Foman*:

"The principle that 'mere technicalities' should not stand in the way of deciding a case on the merits is more a prescription for ignoring the Federal Rules than a useful guide to their construction and application. By definition all rules of procedure are technicalities; sanction for failure to comply with them always prevents the court from deciding where justice lies in the particular case, on the theory that securing a fair and orderly process en-

ables more justice to be done in the totality of cases." *Torres*, 487 U.S. at 319, 108 S.Ct. at 2410 (Scalia, J., concurring in the judgment).

**3.** As the result of a 1993 amendment to Rule 3(c), we are confident that if *Minority Employees* were being decided today the notice of appeal would be deemed adequate to confer appellate jurisdiction as to all of the parties listed as plaintiffs in the complaint. The amendment dealt only with the specification of parties taking the appeal, however, and did not address the designation of the judgment appealed from or the naming of the court to which the appeal is taken. Insofar as the reasoning of *Minority Employees* may shed light on the last two elements of Rule 3(c), it would be unseemly for us to shut our eyes to it.

*Employees,* we should be strongly inclined so to hold—the merits of the appeal would have to be reached. For reasons explained in the remainder of this opinion, the defendants must win the case if we reach the merits. But the plaintiff having lost in the district court, the defendants would also be the winners if we dismissed the appeal on jurisdictional grounds. Under these circumstances, and in the interest of avoiding an unnecessary conflict with the *en banc* court on the jurisdictional issue, we shall simply assume the existence of appellate jurisdiction *arguendo,* without holding that jurisdiction exists. The end result will be identical to that of a dismissal for want of jurisdiction.

### III

■ Mrs. Brooks' version of the accident may be summarized as follows. The kerosene heater in question, which was located in the bathroom of the Brooks' residence, had been left burning all night.[4] When she awoke in the morning, Mrs. Brooks testified, she found that the heater had run out of fuel. Although the instructions warned against fueling the device in the house, Mrs. Brooks did not take the heater outside to refill it. Instead, after getting a kerosene can and siphon from the kitchen, she refilled the heater in the bathroom. It started smoking soon after it was relit, she testified, whereupon she turned it off by activating a spring-loaded emergency shut-off device that was designed to extinguish the flame in the event of the heater's being kicked over or dropped. She then went to the kitchen and propped open the back door, returned to the bathroom, and picked up the heater to carry it outside. As she was moving into the living room, flames suddenly flared out and burned her. She immediately dropped the heater and ran out the front door.

The heater was defective, Mrs. Brooks alleged, in three respects. First, the spring-loaded extinguisher mechanism was said to be of poor quality and design, as a result of which it failed to close completely. Second, the fuel cap (a compression-type cap, similar to the radiator cap on an automobile) could come off too easily. And third, it was alleged, the fuel port through which the heater was filled ought to have been located on the back instead of on the front.

Mr. Fred Grim, called by the plaintiff as an expert witness, opined that the extinguisher mechanism had not closed completely and had allowed the wick to continue burning with a small flame that Mrs. Brooks failed to see; that when Mrs. Brooks picked up the heater, the fuel cap popped off as a result of the motion of the kerosene in the tank; and that the fuel splashed onto the adjacent burner, where it was ignited. The accident would not have happened, he indicated, if the extinguisher mechanism had covered the wick completely, if the fuel cap had been better made, and if the fuel port had been placed at the back instead of the front.

The defendants presented extensive expert testimony countering that offered by Mr. Grim. Defense witness Harold Smith, Ph.D., opined that the extinguisher mechanism—which was made of corrosion-resistant stainless steel and ran on self-lubricating bearings—closed beautifully. Dr. Smith nonetheless conducted an experiment in which the extinguisher was rigged to malfunction. This experiment—which was shown to the jury on video—demonstrated that if the extinguisher had covered only 95 percent of the wick, the concentration of kerosene vapor would have caused the flame to burn higher —and thus to be more readily visible— than would have been the case in normal operation. (Mr. Grim had testified that with 95 percent closure, the flame might have been no bigger than that on a birthday candle.) The defendants' witnesses further testified that the fuel cap was sturdy and well made; that the cap was simple in design, easy to use, and reliable in operation; that the fuel port had to be near the fuel gauge, which was appropriately located in front where people could see it; and that no manufacturer produced a heater with the fuel port at the back.

---

4. Mrs. Brooks testified that she and her husband routinely ran the heater unattended at night while sleeping, notwithstanding that the manufacturer's instructions—which Mrs. Brooks had read—said not to do this.

In their cross-examination of the plaintiff and her witnesses, and in final argument to the jury, the defendants repeatedly referred to a hospital emergency room record that stated—presumably on the basis of what Mrs. Brooks had said at the time—that the patient "noted flames from beneath the heater, picked it up to carry it outside and it burst into flames." The defendants also brought out that an emergency medical service technician remembered Mrs. Brooks saying that she had filled the heater while it was lit.

The most likely scenario, the defendants argued to the jury, was this: that the heater, which could operate for more than 24 hours without refueling, had not run dry in the night; that Mrs. Brooks topped the heater off, on the morning of January 13, without first extinguishing the flame; that she overfilled the fuel tank, spilling kerosene into a drip tray where it caught fire; that she probably activated the emergency shut-off mechanism, which extinguished the flame on the wick but not the flames in the drip tray below; that she then went to open the kitchen door, taking the kerosene can and the siphon with her to get them away from the heater; that having propped open the back door, she returned to the bathroom and picked up the heater without reattaching the fuel cap; that fuel spilled out onto her cotton gown, which caught fire as Mrs. Brooks was entering the living room; and that Mrs. Brooks dropped the heater at this point and ran out the front door, which was closer than the back door.

In his rebuttal, Mrs. Brooks' lawyer reminded the jury that Mrs. Brooks had testified she had no recollection of telling the emergency room doctor about flames coming from under the heater. Her lawyer argued that Mrs. Brooks was a credible and reasonable witness; that no reasonable person would pick up a burning heater, particularly if the fuel cap was off, and head for anything other than the closest exit; and that it was "just an impossibility" for the accident to have happened in any way other than as Mrs. Brooks had testified.

The jury evidently was not persuaded that the accident could only have happened in the way claimed by Mrs. Brooks. In a detailed, multi-part verdict, the jury found that the plaintiff's injuries were not caused by negligence on the part of either of the defendants; that neither of the defendants was strictly liable for the injuries; that neither of the defendants made any material misrepresentations on which the plaintiff relied; and that neither of the defendants breached any express or implied warranty.

## IV

In the memorandum opinion accompanying the order in which Mrs. Brooks' motion for a new trial was denied, the district court summarized the controlling law as follows:

"When reviewing a motion for a new trial, a court should indulge all presumptions in favor of the validity of the jury's verdict. See Ragnar Benson, Inc. v. Kassab, 325 F.2d 591, 594 (3rd Cir.1963). A court should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result. See Ruhlman v. Hankinson, 461 F.Supp. 145, 147 (W.D.Pa.1978), aff'd without opinion, 605 F.2d 1195 (3rd Cir.1979). The simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence. Miles v. Ryan, 338 F.Supp. 1065, 1069 (E.D.Pa.1972), aff'd, 484 F.2d 1255 (3rd Cir.1973)."

Noting that the evidence presented in the instant case was in conflict, the court went on to observe that this circumstance, standing alone, was not sufficient to justify overturning the jury's verdict. We agree. Courts are not free to set aside jury verdicts "simply because different inferences and conclusions could have been drawn or because other results are more reasonable." J.C. Wyckoff & Assoc. v. Standard Fire Insurance Co., 936 F.2d 1474, 1487 (6th Cir.1991); cf. TCP Industries, Inc. v. Uniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981) (citing cases).

A district court has broad discretion in deciding whether to grant a new trial on weight-of-the-evidence grounds, and the denial of a motion for new trial on such grounds should be reversed only upon a showing that the district court abused its discretion.

*Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565, 1573 (6th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986). "Actual cases of reversal for this reason," a leading treatise points out, "are extremely few." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 2819 at 123 (1973) (footnote omitted).

After careful review of those portions of the trial transcript to which the parties have invited our attention, we are confident that the district court did not abuse its discretion in denying the plaintiff's motion here. So abundant was the evidence supporting the defendants' theory of the case, indeed, that it is difficult for us to see how the district court could possibly have rationalized a decision to grant a new trial. Far from abusing its discretion, the district court clearly made the correct decision.

The plaintiff's appeal has no merit, and the appeal is **DISMISSED** for that reason.