**Alfred TEZAK; Marilyn Tezak, Plaintiffs–Appellants,**

v.

**MONTGOMERY WARD & CO., INC., an Illinois corporation; Hoar Construction, Incorporated, doing business as Hoar Construction, a Partnership, a Delaware corporation, Jointly and Severally, Defendants–Appellees,**

**Turner–Brooks, Incorporated, Defendant.**

**No. 00–1425.**

**United States Court of Appeals, Sixth Circuit.**

**March 28, 2002.**

Before BATCHELDER and COLE, Circuit Judges; and GWIN, District Judge.*

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

**OPINION**

COLE, Circuit Judge.

Plaintiffs–Appellants Alfred and Marilyn Tezak appeal from the district court's denial of their Fed.R.Civ.P. 59 Motion for a New Trial. The underlying factual dispute concerns the extent to which Defendants–Appellees Montgomery Ward & Co., Inc. ("Ward") and Hoar Construction, Inc. should be held financially responsible for injuries suffered by Alfred Tezak ("Tezak") while working at a construction site at one of Ward's stores. Plaintiffs' Motion for a New Trial challenged the jury's award of $1,000 in non-economic damages and $0 in economic damages as an amount far below what the evidence at trial supported. The district court denied that motion, from which Plaintiffs now appeal.

Plaintiffs' appeal presents two issues for our consideration: (1) whether the jury's damages award was inconsistent, inadequate, and against the weight of the evidence, thus providing a basis for a new trial; and (2) whether the district court committed reversible error by permitting the testimony of a defense witness, whose identity and anticipated testimony were not disclosed to Tezak until the eve of trial. We find that the district court abused its discretion with regard to economic damages in its denial of the Rule 59 Motion for a New Trial. We **REVERSE** the district court's denial of the Motion for a New Trial, and **REMAND** for a new trial for the determination of the amount of economic damages sustained by Tezak. We **AFFIRM** the district court's denial of the Motion for a New Trial with regard to the finding of contributory negligence and award of non-economic damages. We also **AFFIRM** the district court's decision to

permit the testimony of the defense witness Michael Rosko.

## I. BACKGROUND

In 1994, Montgomery Ward took steps to renovate its retail store at Northland Mall in Southfield, Michigan. It hired Hoar Construction, Inc. to serve as the general contractor for the project, which in turn subcontracted with Gore Wall Systems ("Gore") to install wall partitions throughout the store. Gore selected Savannah Construction Company ("Savannah") to install the partitions. Savannah employee and carpenter Alfred Tezak arrived at the renovation site on October 11, 1994, whereupon he attempted to locate a scaffold needed to install the partitions. As he turned to walk down an aisle, he tripped over two sheets of masonite stacked on the floor, suffering a fractured right knee, a broken right elbow, and a ligament injury to his right wrist.

In June 1995, Tezak and his wife, Marilyn, filed an action in the Michigan Circuit Court, Sixth Judicial Circuit, alleging that Montgomery Ward and Hoar Construction were negligent in the maintenance of Ward's renovation site, and that, as a result of that negligence, Alfred Tezak suffered serious injury and Marilyn Tezak sustained a loss of consortium. Ward removed the action to the United States District Court for the Eastern District of Michigan, based on that court's diversity jurisdiction, and the matter proceeded to trial on April 19, 1999.

Testimony at trial revealed that on October 19, 1994, approximately one week after the accident, Tezak visited his family physician, Dr. Gunsel Avci–Wolf, complaining of shortness of breath. Subsequent testing determined that Tezak had developed a pulmonary embolism due to a blood clot in his right leg known as a deep vein thrombosis. Tezak was hospitalized for five days, after which Dr. Avci–Wolf placed him on medication and monitored him on a regular basis. She concluded that Tezak was permanently disabled. When Tezak terminated his medication regimen six months later, he developed a bilateral deep vein thrombosis, resulting in further hospitalization.

In November 1994, Tezak consulted with orthopedic surgeon William Risk, who examined Tezak and concluded that his injuries, including his deep vein thrombosis, were attributable to his 1994 fall. Dr. Risk testified that Tezak's elbow and wrist injuries resulted in a permanent loss of range motion, which would prevent him from ever again working as a carpenter. On cross-examination, Dr. Risk conceded that Tezak had a history of poor blood circulation in his legs and had presented evidence of an incompetent venous valve system well before his 1994 accident, stemming from a "catastrophic" right heel injury suffered by Tezak in 1969. The heel injury was so disabling that Tezak was physically unable to work for a two-and-one-half-year period. The injury resulted in the loss of approximately one inch from Tezak's right leg and caused him to walk with a permanent limp and experience pain and swelling in both legs for several years thereafter. Dr. Risk also testified that Tezak's limp required him to drag his leg when he walked, which resulted in a loss of musculature in his calf muscle, the development of severe varicose veins, and some difficulty in walking which resulted in Tezak suffering subsequent falls and injuries.

Vascular surgeon John Pfeiffer examined Tezak in October 1996 and opined that Tezak's fall in 1994 caused the deep vein thrombosis and permanently compromised his right leg. He concluded that Tezak was permanently disabled and was at risk of further, potentially life-threatening, blood clots if he attempted even a

short period of employment. Dr. Pfeiffer admitted on cross-examination that he did not examine Tezak until more than two years after Tezak's fall and approximately one year after Tezak filed the instant lawsuit, and that he was unaware of Tezak's medical history, including any prior circulatory problems in his legs. Significantly, Dr. Pfeiffer suggested that if in fact Tezak suffered from an incompetent venous valve system, then it was possible that the circulation problems Tezak attributed to his fall actually predated his accident.

Defendants presented no medical experts at trial, offering instead the testimony of Michael Rosko, a vocational rehabilitation expert who posited that Tezak could continue to earn approximately $18,600, his average annual salary from 1990–1994, even with his injuries. He conceded that Tezak was physically unable to return to carpentry work, but noted that Tezak could continue to perform less physically demanding work, and that, in any event, it was not uncommon for carpenters to retire in their fifties as a result of the physical rigors of the work. He qualified his conclusion, however, by noting that he has no medical expertise, and that if a physician concluded that Tezak were permanently disabled, then Rosko would defer to the physician's opinion.

At the close of the evidence, the district court instructed the jury that the parties had entered into a stipulation that provided: "Alfred Tezak's medical bills to date as a result of this incident total $67,523.00." A jury returned a verdict on April 30, 1999, in favor of Tezak, and concluded that Defendants' negligence was the proximate cause of Tezak's injuries. It awarded Plaintiffs $0 in economic damages and $1,000 in non-economic damages, and, in assigning fault, determined that liability rested in large part with Tezak, finding him 98% negligent and Defendants 2% negligent.[1] Neither party disputes these findings. Indeed, the issue of contributory negligence is not before us on appeal.

Thereafter, on May 11, 1999, Tezak filed a Motion for a New Trial, arguing that a new trial was warranted because the jury's damages award was grossly inadequate, inconsistent, and against the weight of the evidence, particularly in light of the stipulated medical expenses of more than $67,000 and the collective testimony of Drs. Avci–Wolf, Risk, and Pfeiffer that Tezak's injuries were the result of his 1994 fall and that, as a consequence of those injuries, he would be unable to continue employment as a carpenter. The district court denied that motion on March 30, 2000, from which this timely appeal followed.

On appeal, Plaintiffs challenge the jury's assessment of damages. They also maintain that the district court improperly admitted the expert testimony of Michael Rosko, noting that Defendants failed to disclose Rosko's identity or his anticipated testimony until after the close of discovery; failed to supplement their interrogatory answers concerning their proposed use of expert testimony; and failed to submit an expert report, as required by Fed.R.Civ.P. 26(a)(2). As the discussion below will demonstrate, only Plaintiffs' argument as to economic damages has merit.

## II. DISCUSSION

### A. Adequacy of the Jury's Verdict

#### 1. Standard of Review

A district court's denial of a Rule 59 Motion for a New Trial is reviewed for an abuse of discretion, which requires "a definite and firm conviction that the trial court

---

1. Plaintiffs' net recovery was $20.

committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989) (citing *Balani v. Immigration & Naturalization Serv.*, 669 F.2d 1157 (6th Cir.1982)). We have observed that:

> [w]hen reviewing a motion for a new trial, a court should indulge all presumptions in favor of the validity of the jury's verdict. A court should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result. The simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence.

*Brooks v. Toyotomi Co., Ltd.*, 86 F.3d 582, 588 (6th Cir.1996) (internal citations omitted), *abrogation on other grounds recognized by United States v. Webb*, 157 F.3d 451, 452–53 (6th Cir.1998) (per curiam), *abrogated by Dillon v. United States*, 184 F.3d 556 (6th Cir.1999).

In diversity actions, federal law and state law both bear on the decision to grant a new trial. Rule 59 governs the procedural question of whether to grant a new trial, and the law of the forum state, Michigan in this case, determines the substantive question of whether a challenged verdict is inadequate or excessive. *See Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 224 (6th Cir.1997). This distinction is significant, because although a party challenging a jury verdict as inadequate may seek an additur under Michigan law, the Federal Rules of Civil Procedure provide no such relief, and thus, a federal plaintiff, upon making such a showing, is entitled only to a new trial.

In setting forth the appropriate standard of review of a jury verdict challenged as excessive, the Supreme Court of Michigan has explained:

> [T]he question of the excessiveness of a jury verdict is generally one for the trial court in the first instance. The trial court, having witnessed all the testimony and evidence as well as having had the unique opportunity to evaluate the jury's reaction to the proofs and to the individual witnesses, is in the best position to make an informed decision regarding the excessiveness of the verdict. Accordingly, an appellate court must accord due deference to the trial court's decision and may only disturb a grant or denial of remittitur if an abuse of discretion is shown.

*Palenkas v. Beaumont Hosp.*, 432 Mich. 527, 443 N.W.2d 354, 355 (Mich.1989). Indeed, a reviewing court's inquiry is properly limited "to *objective* considerations relating to the actual conduct of the trial or to the evidence adduced." *Id.* at 356. Such objective criteria include whether the verdict was in an amount supported by the evidence presented at trial; whether the verdict was "the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact"; whether the verdict was "within the limits of what reasonable minds would deem just compensation for the injury sustained"; and whether the jury award is comparable to awards in similar cases both within the state and within other jurisdictions. *Id.*

### 2. Analysis

 The Plaintiffs were not satisfied with the jury verdict in this case. Although the jury found Defendants Montgomery Ward and Hoar negligent in the maintenance of Ward's renovation site and concluded that that negligence was the proximate cause of Ward's injuries, it awarded Plaintiffs only $1,000 in non-economic damages and $0 in economic damages. Plaintiffs challenge the jury's award as inadequate, inconsistent, and against

the weight of the evidence. Plaintiffs submit that, at a minimum, the damages award failed to compensate them for the $67,523 in medical expenses to which the parties stipulated before trial. Plaintiffs argue that the jury, in reaching this conclusion, ignored, without any objective basis, several pieces of "uncontroverted" evidence that established, among other things, that Tezak suffered elbow, wrist, and knee injuries that were each attributable to his fall; that Tezak's injuries rendered him unable to work for a period of time; and that Marilyn Tezak suffered a loss of society and companionship as a result of Tezak's injuries. This evidence, Plaintiffs maintain, coupled with Drs. Avci–Wolf's and Pfeiffer's testimony that Tezak's deep vein thrombosis was the proximate result of Tezak's fall, provided an objective basis for a damages award well in excess of the $1,000 awarded by the jury.

Plaintiffs face a difficult burden in establishing that a new trial is warranted for an inconsistent verdict. *See Bean v. Directions Unlimited, Inc.*, 462 Mich. 24, 609 N.W.2d 567, 571 (Mich.2000) ("A jury's verdict is to be upheld, even if it is arguably inconsistent, '[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury.'" (quoting *Granger v. Fruehauf Corp.*, 429 Mich. 1, 412 N.W.2d 199 (Mich. Ct.App.1987))). It is true, as Plaintiffs suggest, that "where a jury verdict ignores the uncontroverted out-of-pocket expenses of the plaintiff, such verdict is inadequate on its face and must be reversed." *Moore v. Spangler*, 401 Mich. 360, 258 N.W.2d 34, 39 (Mich.1977).

Turning first to the economic damages question, we note that Defendants argued throughout trial that the existence of Tezak's pulmonary embolism, deep vein thrombosis, and his other circulatory prob-

lems, predated Tezak's 1994 accident. Thus, a jury reasonably could have concluded that those medical expenses were not directly linked to Tezak's fall and thus not recoverable. Moreover, at trial, Tezak made no effort to distinguish the expenses related to his fractured elbow. wrist, and knee from the expenses stemming from his circulatory problems, which might have provided the jury with some basis to evaluate which medical expenses should be recoverable by Tezak. Finally, a jury could have reasonably concluded that, in light of Tezak's voluntary admission at trial that his employer provided free health insurance, all of Tezak's medical expenses were covered by insurance and thus not recoverable.

Despite these factors, the jury was instructed at trial that the parties had stipulated that Tezak's medical expenses "as a result of this incident" totaled $67,523. We note that this instruction refers to the cause of the medical expenses, and not just the amount. It is true that at a hearing before the district court, the parties stipulated to the $67,523 figure as the amount of Tezak's medical bills following the accident. However, at trial, the district court instructed the jury that this was the stipulated amount "as a result of this incident." No objection by Defendants to this very important change in the language of the stipulation is contained in the record, and the jury heard only this uncontroverted instruction to accept the stipulation as a fact in the case.

■ Given this instruction, the jury ignored Tezak's uncontroverted out-of-pocket economic expenses in its award. When this occurs, "such verdict is inadequate on its face and must be reversed." *Moore*, 258 N.W.2d at 39. Federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award.

*See Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Accordingly, granting a Motion for a New Trial is appropriate where the jury's award bears no relation to the evidence of damages. *Davis v. Yovella*, No. 95–5415, 1997 WL 159363, at *3 (6th Cir. Apr. 2, 1997). *See also Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir.1996) ("A trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached."); *Cappello v. Duncan Aircraft Sales*, 79 F.3d 1465, 1476–77 (6th Cir.1996) (awarding a new trial on damages because the jury erred in calculating damage award by failing to consider the undisputed expenses). The district court abused its discretion by not granting the Motion for a New Trial on the issue of economic damages. *Logan*, 865 F.2d at 790.

■ We see no reason why the jury's determination of contributory negligence in this case, however, was not supported by the evidence. *Davis*, 1997 WL 159363, at *3. In fact, the issue of liability is not before us on appeal. As such, the remand on the issue of economic damages will deal only with a determination of the amount of damages sustained by Tezak. Michigan follows a pure comparative negligence rule, reducing a plaintiff's recovery by the proportion as his conduct bears to the total fault. *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511, 519–29 (Mich.1979). Accordingly, the economic damage verdict from the new trial will be reduced by 98% consistent with the finding of the first jury.

■ On the question of non-economic damages, we find that Plaintiffs' argument misses the mark. In resolving this question, we must determine whether the jury's award of $1,000 in non-economic damages is supported by the evidence. *See Palenkas*, 443 N.W.2d at 356. We conclude that it is. Plaintiffs argue that they were entitled to additional compensation for pain and suffering caused by Tezak's fall. The jury could have reasonably concluded, however, in light of the evidence presented by Defendants at trial, that the majority of Tezak's pain and suffering actually stemmed from his pre-existing circulatory problems, and not from the injuries sustained from his accident, and on the basis of that conclusion, awarded him only $1,000. In denying Plaintiffs' Motion for a New Trial, the district court recognized as much when it observed:

> The jury's verdict of $1,000.00 for non-economic damages is also supported by the evidence. The jury had the opportunity to judge the credibility of the witnesses at trial, including any testimony as to pain and suffering. It is within the jury's province to determine the credibility of the witnesses. The jury could have reasonably concluded that Plaintiffs did not suffer as much pain and suffering.

We are not persuaded that the district court abused its discretion in denying Plaintiffs' Motion for a New Trial with regard to the award of non-economic damages.

Accordingly, the district court abused its discretion with regard to economic damages in its denial of the Rule 59 Motion for a New Trial. We remand for a new trial for a determination of the amount of economic damages sustained by Tezak. The district court properly denied Plaintiffs' Motion for a New Trial with regard to the award of non-economic damages.

## B. Michael Rosko's Testimony

### 1. Standard of Review

Decisions regarding the admission and exclusion of evidence are within the peculiar province of the district court and are

not to be disturbed on appeal absent an abuse of discretion, *see United States v. Tocco*, 200 F.3d 401, 416 (6th Cir.2000), which requires the appellate court to be left with "a definite and firm conviction that the court below committed a clear error of judgment." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 209 (6th Cir.1995).

## 2. Analysis

■ During the course of discovery, Tezak propounded interrogatories to Defendants, which requested information concerning the identity, opinions, and anticipated testimony of experts that would likely be called to testify at trial. The district court entered two orders directing Defendants to respond to the interrogatories. Although the district court set a June 3, 1996, deadline for exchange of witness lists, Michael Rosko's name was not on any of the witness lists submitted on or before this date. In fact, Defendants did not disclose Rosko's name until they released their November 1996 pretrial report shortly before the instant action was first scheduled to proceed to trial. At the pretrial conference, the district court invited the parties to submit additional briefing on what, if any, discovery issues remained pending. The parties complied with the court's request in which Plaintiffs noted their objection to Defendants' late listing of the expert. The action did not proceed to trial as scheduled. Rather, in July 1997, after Ward initiated Chapter 11 bankruptcy proceedings, the matter was stayed pursuant to 11 U.S.C. § 362.

A final pretrial conference was held on October 26, 1998, at which the district court failed to address Plaintiffs' pending objection to Defendants' untimely inclusion of Rosko in their pretrial report as a potential expert witness. On the motion of Hoar Construction, the district court again postponed trial and rescheduled it for April 22, 1999. At a March 1999 status conference, Plaintiffs objected to Defendants' use of Rosko as an expert witness at trial, and again the district court reserved ruling on the issue. Plaintiffs received a copy of Defendants' expert's report on April 9, 1999, and when the bankruptcy stay was lifted ten days later, the matter proceeded to trial on April 19, 1999. On the date of trial, the district court concluded that it would permit Rosko to testify, but would allow Plaintiffs to present a rebuttal witness if they determined that one was necessary. At the close of Defendants' case-in-chief, Plaintiffs sought to call a vocational rehabilitation expert in rebuttal. The district court, however, refused Plaintiffs' request.

Plaintiffs now submit that the district court committed reversible error by allowing the testimony of Defendants' vocational rehabilitation expert, Michael Rosko. Specifically, they argue that Rosko was not identified as a potential witness on Defendants' witness list until after the close of discovery in August 1996; that Defendants never made Rosko available for a deposition; and that Defendants failed either to supplement their answers to interrogatories concerning expert testimony or to provide an expert report, as required by Fed. R.Civ.P. 26(a)(2), until shortly before trial. Defendants respond that Plaintiffs had more than two-and-one-half years to prepare for Rosko's testimony, since by their own admission, they were put on notice that he might testify at trial as early as November 1996, when Defendants disclosed his identity as a potential expert witness, during which period Plaintiffs could have deposed Rosko. They made no effort to do so, and cannot now argue that they were prejudiced by the parties' failure to depose him. We are further persuaded that although Defendants did not file a Fed.R.Civ.P. 26(a)(2) expert report until April 9, 1999, they still met the deadline the district court had previously set

for submission of such reports. That Defendants failed to submit an expert report sooner—indeed, they argue that they could not have done so because Rosko had not yet prepared a report—does not amount to evidence of Defendants' bad faith. We find no abuse of discretion.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of the Motion for a New Trial, and **REMAND** for a determination of the amount of economic damages sustained by Tezak. We **AFFIRM** the district court's denial of the Motion for a New Trial with regard to the finding of contributory negligence and award of non-economic damages. We also **AFFIRM** the district court's decision to permit the testimony of the defense witness Michael Rosko.