**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0581n.06
Filed: August 13, 2007

**No. 06-1694**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DAVID JIMKOSKI,** Personal Representative of the Estate of Alger Jimkoski, Deceased**,** | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| *Plaintiff-Appellant,* | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| | ) | **O P I N I O N** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | ) ) ) | |
| *Defendant-Appellee*. | ) | |

BEFORE: BATCHELDER and COLE, Circuit Judges; PHILLIPS, District Judge[*]

**R. GUY COLE, JR., Circuit Judge.** Following the Plaintiff's less-than-hoped-for jury verdict, Plaintiff-Appellant David Jimkoski ("the Estate"), the personal representative of decedent Alger Jimkoski's Estate, appeals various district court rulings in this diversity insurance-contract action, brought against Defendant-Appellee State Farm Mutual Automobile Insurance Company ("State Farm"), seeking damages for and recovery of unpaid insurance benefits. For the following reasons, we **AFFIRM** the challenged rulings.

---

[*]The Honorable Thomas W. Phillips, United States District Judge, Eastern District of Tennessee, sitting by designation.

## I. BACKGROUND

**A.**     **Facts**

In October 1976, a speeding pickup truck rear-ended a tractor driven by then forty-one-year-old Alger Jimkoski. The accident launched Alger over 100 feet and left him comatose. Although Alger survived the accident and emerged from the coma, he was rendered mentally and physically disabled. From the time of the accident until his death in August 2000, Alger required constant care, a portion of which was provided at home by his wife, Patricia Jimkoski.

Under Alger's insurance policy, which was issued by State Farm in accordance with Michigan's No-Fault Act, Mich. Comp. Laws § 500.3103, et seq., State Farm made payments to the Jimkoskis from the time of Alger's accident until his death in August 2000. The policy provided $1,000,000 in first-party, no-fault insurance benefits, which covered medical expenses, lost wages, attendant care services, and medical mileage. This case focuses on whether State Farm adequately compensated Patricia for the attendant care services she provided to Alger over the twenty-four-year period from the time of Alger's accident until his death.

For the first six years after Alger's accident, State Farm did not compensate Patricia for any of the services she provided to Alger. Beginning in 1983, however, Patricia began submitting monthly affidavits to State Farm outlining the number of hours and the services she performed. From 1983 to Alger's death in 2000, State Farm paid Patricia for at least a portion of the attendant care services she provided.

Although Patricia testified that she could not recall ever requesting from State Farm compensation for attendant care services prior to 1983, she testified that State Farm told her that it

was her "wifely duty" to care for Alger. (Joint Appendix ("JA") 189, 194.) Patricia began receiving

reimbursements for Alger's attendant care in 1983 only after a State Farm claims supervisor

reviewed Alger's file and logged the following:

> It's rather obvious [that] Mrs. Jimkoski has been a nurse to [Alger] since the accident and we have paid nothing for these services. From this date on we will pay $30 per day. For past services rendered we will pay for their car—required to get him to and from the Dr. etc. The payoff is $2697.62. If it were not for the wife[,] we would have to maintain [Alger] in a medical facility. . . . Simply issue draft to Patricia Jimkoski for car pay-off . . . $2697.63. Don't include ["]bank on draft["]—simply indicate ["]for past medical nursing care.["]

(JA 197–98.)

For approximately 10 years, State Farm compensated Patricia at five dollars per hour at six

hours per day (i.e., $30 per day). In February 1994, State Farm increased the rate to six dollars per

hour but reduced the hours to four (i.e., $24 per day). Patricia testified that she never informed State

Farm that the reimbursements might be inadequate because she "trusted State Farm and that's all

they said [she] got paid." (JA 191.)

**B.      Procedure**

Within two years of Alger's death, Alger's Estate brought suit against State Farm in Wayne

County Circuit Court seeking $8,000,000 in damages for underpayment of attendant care services

that Patricia provided to Alger over twenty-four years. The Estate sought personal injury protection

("PIP") benefits under the Michigan No-Fault Act, and alleged (1) violations of the Michigan

Consumer Protection Act, (2) bad faith breach of an insurance contract, (3) tortious interference with

a contract, (4) intentional infliction of emotional distress, and (5) violations of the Michigan Uniform

Trade Practices Act. State Farm removed the action to federal court based on diversity of citizenship.

After the Estate withdrew several of its claims and the district court granted summary judgment for State Farm on all but one of the Estate's remaining claims, the case proceeded to trial on only the Estate's claim for underpayment of PIP benefits (i.e., attendant care services), and, in accordance with Michigan's "one-year-back" rule, Mich. Comp. Laws § 500.3145(1), this claim was limited to underpayments incurred during the one year prior to Alger's death.

Before trial, State Farm filed four motions in limine relevant to this appeal. The district court granted State Farm's motions to preclude the Estate from (1) mentioning benefits that were or were not paid prior to August 14, 1999, or any delay in the payment of those benefits, (2) eliciting opinion testimony from State Farm personnel regarding legal conclusions, and (3) mentioning fraud. The court granted in part and denied in part State Farm's motion to preclude the Estate from (4) offering the testimony of State Farm personnel who worked on the Jimkoski file before August 14, 1999, to the extent that the Estate could not elicit testimony pertaining to fraud or sexist remarks.

After a four-day trial, the jury returned a verdict in favor of the Estate, finding that the Estate was entitled to recover PIP benefits from State Farm from the period of August 14, 1999, to August 14, 2000, in the amount of $25,000, plus $17,171.22 in statutory interest (i.e., 12%) and $1,011.83 in interest as part of damages (i.e., 2%), for an award totaling $43,183.05. Following the verdict, the Estate filed a motion for additur or, in the alternative, a new trial on damages, along with a motion for attorney fees. The district court denied the Estate's motion, and this timely appeal followed.

## II. DISCUSSION

**A.    Summary Judgment**

The Estate challenges the district court's grant of summary judgment in favor of State Farm—which came via a State Farm motion for reconsideration—that pruned the Estate's case down to a single claim for PIP benefits allegedly unpaid during the one year prior to Alger's death. The Estate argues that it should have been allowed to proceed to trial on (1) a claim for underpayment of PIP benefits covering not just the one year prior to Alger's death, but for the entire 24 years following Alger's accident, and (2) a bad-faith-breach-of-insurance-contract claim.

1.    Standard of Review

Normally, we review a district court's decision regarding a motion for reconsideration for an abuse of discretion. Where, however, as here, the motion seeks reconsideration of a summary-judgment grant, we review the decision de novo as though we were reviewing the summary-judgment grant. *Hansmann v. Fid. Invs. Institutional Servs. Co.,* 326 F.3d 760, 766–67 (6th Cir. 2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

2.    PIP Benefits

The interaction between the relevant statutes here is clear. Because it is undisputed that Alger received at least some PIP benefits from State Farm, the No-Fault Act's one-year limitations period

required the Estate to bring suit by August 14, 2001—within one year after Alger incurred the last expense, which would have been August 14, 2000, the day Alger died. Because the Estate did not bring suit until March 15, 2002 (over a year and a half after Alger's death), the Estate's claim was ostensibly time barred under Mich. Comp. Laws § 500.3145(1) ("If . . . payment has been made, the action may be commenced at any time within 1 year after the most recent . . . survivor's loss has been incurred.").

Michigan's death savings statute, however, revived the Estate's claim. This statute extended the limitations period to bring the PIP benefits claim from one year after Alger's death to two years after Alger's personal representative was appointed, which occurred on March 19, 2001. Mich. Comp. Laws § 600.5852 ("[A]n action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run."). Therefore, because the death savings statute extended the limitations period to March 19, 2003, the Estate's March 15, 2002 action was not time barred.

Although the Estate's action was not time barred, recovery was limited. Under the No-Fault Act's one-year-back rule, the Estate was not entitled to recover for the entire 24-year period that it alleged Patricia was underpaid PIP benefits. Because no suit was filed within one year of Alger's accident, the one-year-back rule applies, which limits recovery to only those expenses incurred during the year before Alger's death. Mich. Comp. Laws § 500.3145(1); *accord, e.g., Cameron v. Auto Club Ins. Ass'n*, 718 N.W.2d 784, 788 (Mich. 2006). Therefore, the district court correctly allowed the Estate's action to proceed to trial, but only for recovery of expenses incurred between August 14, 1999, and August 14, 2000—the year before Alger's death.

Notwithstanding the application of these statutes, the Estate contends that, because of its well-pleaded allegations of fraud, it was entitled to equitable tolling of the one-year-back rule. That is, says the Estate, the district court erred by not permitting the Estate to pursue PIP benefits dating back to October 1976, because State Farm fraudulently induced the Jimkoskis into believing they were receiving the proper amount of PIP benefits. The Estate's argument is meritless because, as the district court correctly concluded, the Estate improperly pleaded fraud.

The Estate did not plead fraud with particularity. The Sixth Circuit has interpreted Federal Rule of Civil Procedure 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See, e.g.*, *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). Here, the Estate's complaint fell short of this requirement. The Estate's complaint contained three counts only, none of which listed a fraud claim. Further, a review of the Estate's 43-paragraph complaint finds no allegations of the time, place, and content of any alleged misrepresentations. As the district court noted, although the Estate's "allegations may satisfy the general pleading requirements, they do not state a claim of fraud with particularity." (JA 612.)

3.    Bad Faith Breach of Insurance Contract

The Estate contends that the its well-pleaded allegations of fraud were sufficient to allow its bad-faith-breach-of-insurance-contract claim to proceed to trial. As an initial matter, as discussed, the Estate failed to plead fraud with particularity. Therefore, this argument is also meritless.

In any event, as the district court explained, Michigan does not recognize an independent tort based on bad faith breach of an insurance contract. *See, e.g.*, *Kewin v. Mass. Mut. Life Ins. Co.*, 295

N.W.2d 50, 56 (Mich. 1980) ("We decline to follow the California court and to declare the mere bad-faith breach of an insurance indemnity contract an independent and separately actionable tort and to thereby open the door to recovery for mental pain and suffering caused by breach of a commercial contract."). And the Estate does not allege the breach of any duty existing independent on the insurance contract. *See id*. at 55; *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 907–08 (Mich. 1985). A mere failure to perform an obligation under a contract "cannot give rise to a negligence cause of action." *Id*. at 909. Thus, the district court did not err when it dismissed the Estate's bad-faith-breach-of-insurance-contract claim.

**B.      Motion to Amend the Complaint**

After the district court concluded that the Estate failed to properly plead fraud, the Estate moved to amend its complaint to present a fraud claim. The district court denied the motion. We review the district court's decision denying the Estate's motion to amend its complaint for an abuse of discretion. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). An abuse of discretion occurs when this Court is "left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) (citations, alterations, and internal quotation marks omitted).

The district court did not abuse its discretion when it denied the Estate's motion to amend the complaint. The Estate's motion came over a year after the deadline for filing dispositive motions had already passed, only eight days before the start of trial, and well after discovery had concluded.

At this late stage, State Farm would have been prejudiced had the district court permitted amendment. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree."). Moreover, the Estate did not offer, and still does not offer, good cause for the three-and-a-half-year delay between filing its original complaint and its motion to add the fraud claim. *See* Fed. R. Civ. P. 16(b) (requiring a showing of "good cause" before a district court's scheduling order is modified). Any argument that the Estate was unaware that fraud claims must be pleaded with particularity under Rule 9(b) is unavailing. *See, e.g.*, *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 971 (6th Cir. 1973) ("A misconception of the law is not an excuse for the late presentation of an alternative theory of recovery."). Therefore, the district court's denial of the Estate's request to amend the complaint did not constitute an abuse of discretion.

## C.      Motions in Limine

The Estate challenges the district court's ruling on four motions in limine. We review a district court's evidentiary ruling for an abuse of discretion. *United States v. Phibbs*, 999 F.2d 1053, 1078 (6th Cir. 1993).

First, the Estate challenges the district court's grant of State Farm's motion in limine to preclude the Estate from mentioning fraud. The district court premised its decision on the Estate's

failure to plead fraud with particularity. That is, because the Estate did not properly plead fraud, any evidence regarding the defrauding of the Jimkoskis would not be relevant to the determination of the amount of PIP benefits owed during the one-year period prior to Alger's death. Indeed, it would have been entirely reasonable for the district court to conclude that the probative value of any evidence of fraud during the 23 years after Alger's accident, until the year before his death, was substantially outweighed by the danger of prejudice to State Farm and the possibility of confusing or misleading the jury. *See* Fed. R. Evid. 403. Thus, the district court acted within its discretion.

State Farm filed three other motions in limine relevant to this appeal. The district court granted State Farm's motions to preclude the Estate from (1) mentioning benefits that were or were not paid prior to August 14, 1999, or any delay in the payment of those benefits, and (2) eliciting opinion testimony from State Farm personnel regarding legal conclusions. As to the third, the district court granted in part and denied in part State Farm's motion to preclude the Estate from (3) offering the testimony of State Farm personnel who worked on the Jimkoski file before August 14, 1999, to the extent that the Estate could not elicit testimony pertaining to fraud or sexist remarks.

The Estate's argument that the district court abused its discretion in granting these three motions in limine is wholly predicated on its argument that the district court abused its discretion in granting State Farm's motion in limine to preclude the Estate from mentioning fraud. Because we hold that the district court did not abuse its discretion when it granted State Farm's motion in limine to preclude the Estate from mentioning fraud, the Estate's argument regarding these three other motions is meritless.

Nonetheless, independent reasons existed for the district court to grant these motions in limine. By the time this case reached trial, the only relevant issues were (1) whether the Estate was entitled to receive additional compensation for attendant care services provided by Patricia to Alger during the one-year period prior to Alger's death, and (2) the appropriate rate for those services. The district court therefore did not abuse its discretion when it precluded the Estate from (1) mentioning benefits that were or were not paid prior to August 14, 1999, or any delay in the payment of those benefits, and (2) offering the testimony pertaining to fraud or sexist remarks of State Farm personnel who worked on the Jimkoski file before August 14, 1999. The district court could reasonably have determined that this evidence was irrelevant and would only serve to prejudice State Farm in the eyes of the jury. *See* Fed. R. Evid. 401, 402, 403.

Finally, it was also within the discretion of the district court to preclude the Estate from eliciting opinion testimony from State Farm personnel regarding legal conclusions. We have explained that "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (citation, alteration, and internal quotation marks omitted). Thus, the district court did not abuse its discretion when it granted this motion also.

**D.    Mistrial**

Next, the Estate argues that the district court should have granted the Estate's motion for mistrial after State Farm made two improper remarks to the jury during opening statements. We

review a district court's denial of a motion for mistrial for an abuse of discretion. *Beck v. Haik*, 377 F.3d 624, 642 (6th Cir. 2004).

The parties agree that counsel for State Farm made two improper remarks during opening statements. The first remark described State Farm honoring claims for Alger's care from 1976 to 1999, and the second stated that the Jimkoskis never alerted State Farm that Alger required 24-hour care. These remarks alone are insufficient for us to hold that the district court abused its discretion in not declaring a mistrial, *see Beck*, 377 F.3d at 642–43 ("In appeals of civil cases, grants of mistrial on the basis of a single episode of improper questioning or argument have been rare."), particularly where the district court presented the jury with a specific curative instruction directing the jury to disregard State Farm's improper statements and to ignore attorney remarks not supported by the evidence. (*See* JA 817–88, 1096.) At any rate, the Estate has failed to establish that any improper statements "consistently permeated the entire trial from beginning to end." *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). Thus, the district court did not abuse its discretion when it denied the Estate's motion for mistrial. *See, e.g.*, *Wilson v. Morgan*, 477 F.3d 326, 341 (6th Cir. 2007) (holding that denial of motion for mistrial was not an abuse of discretion where court promptly gave curative instruction to disregard improper opening statement and twice instructed jurors that they were to consider only the issues before them)

 **E.  Motion for Additur or, in the Alternative, New Trial on Damages**

"Federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award." *Tezak v. Montgomery Ward & Co., Inc.*, 33 F. App'x 172, 177–78 (6th Cir. 2002) (citing *Dimick v. Schiedt*, 293 U.S. 474 (1935)); *accord, e.g.*,

*Traylor v. United States*, 396 F.2d 837, 840 n.4 (6th Cir. 1968) ("Additur is not permitted in the federal court when a jury verdict is found inadequate."). True, some circuits have held that additur may be constitutionally permissible in cases where damages are not in dispute. *See, e.g., Davis v. United States*, 716 F.2d 418, 430 (7th Cir. 1983); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252–53 (11th Cir. 1997); *Moreau v. Oppenheim*, 663 F.2d 1300, 1311 (5th Cir. 1981); *Decato v. Travelers Ins. Co.*, 379 F.2d 796, 798 (1st Cir. 1967). The Sixth Circuit, however, has yet to hold one way or the other. Regardless, here, damages are clearly in dispute. Therefore, the Estate's motion is properly viewed as a motion for a new trial on damages only. We review a district court's denial of a motion for a new trial for an abuse of discretion. *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996).

The Estate contends that the $25,000 verdict (before interest) for attendant care services from August 14, 1999, to August 14, 2000, was unreasonably low and against the clear weight of the evidence. The Estate argues that the verdict should have been for $227,301, which represents a year of 24-hour attendant care at $13.50 per hour, including overtime. According to the Estate, it was undisputed that $13.50 per hour was the reasonable market rate for professional aides and that Alger required 24-hour care during his last year alive. Therefore, says the Estate, the district court abused its discretion when it denied the Estate's motion for a new trial on damages.

Our "scope of review of a damage award is extremely narrow." *Id*. We may set aside a verdict and grant a new trial only when (1) the verdict is against the clear weight of the evidence, and (2) the verdict is unreasonable. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820–21 (6th Cir. 2000). Thus, where a jury's award bears no relation to the evidence of damages, it is

appropriate to grant a motion for a new trial. *Anchor*, 94 F.3d at 1021. But, where the verdict is supported by some competent, credible evidence, a district court will be deemed within its discretion to deny the motion. *Id*.

We have little trouble concluding that the jury's verdict here was reasonable and supported by competent, credible evidence. First, it was not unreasonable and against the great weight of the evidence for the jury not to award 24-hour care benefits. Although the Estate presented some evidence that Alger required 24-hour care (i.e., a doctor's 1994 prescription), State Farm presented evidence that Alger did not (i.e., testimony from a case manager contradicting the doctor's prescription, as well as testimony from several claims adjusters). The jury could reasonably have credited State Farm's evidence over the Estate's. Second, the jury could reasonably have awarded a rate less than $13.50 per hour. Nothing requires an insurer to pay family caretakers the same rate as professional aides. *Cf. Grant v. AAA Michigan/Wisconsin, Inc.*, 724 N.W.2d 498, 500 (Mich. Ct. App. 2006) (describing a No-Fault payment scheme where family reimbursement rate lower that professional rate). Therefore, the district court did not abuse its discretion when it denied the Estate's motion for a new trial on damages.

**F.      Motion for Attorney Fees**

Finally, the Estate challenges the district court's denial of its motion for attorney fees. Under Michigan law, an attorney is entitled to a reasonable fee for representing a claimant in an action for overdue insurance benefits, so long as "the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Mich. Comp. Laws. § 500.3148(1). The district court concluded that State Farm did not unreasonably refuse to pay the Estate because

there were legitimate factual uncertainties in this case, including the number of hours of care Alger required, how much care Patricia actually provided, and which of Alger's ailments were attributable to the 1976 accident. We review the district court's denial of the Estate's motion for attorney fees for an abuse of discretion. *In re Ruben*, 825 F.2d 977, 984 (6th Cir.1987).

The amount of care Alger required during his last year alive was clearly in dispute. The Estate's position was that Alger required 24-hour care, which the Estate sought to substantiate through a doctor's prescription from 1994. State Farm's position was that Alger required only four hours of daily care (which it had been reimbursing Patricia for since 1994), based on testimony from a case manager who contradicted the doctor's 1994 prescription, as well as testimony from several claims adjusters. Under these circumstances, the district court acted within its discretion when it denied the Estate's motion for attorney fees. *See, e.g.*, *Gobler v. Auto-Owners Ins. Co.*, 404 N.W.2d 199, 205–06 (Mich. 1987) ("[A] refusal or delay in payments by an insurer will not be found 'unreasonable' within the meaning of § 3148 where the delay is the product of . . . a bona fide factual uncertainty.").

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court's rulings.

**ALICE M. BATCHELDER, Circuit Judge, concurring.** I agree with the lead opinion as to the Estate's equitable tolling and bad faith breach of an insurance contract claims. And while I agree that we should affirm the district court's decision, I would do so on the basis of harmless error.

Michigan's No Fault Benefits Act provides that "the claimant may not recover benefits for any portion of the loss incurred *more than 1 year before the date on which the action was commenced*." Mich. Comp. Laws § 500.3145(1) (emphasis added). This one-year-back rule serves as a limitation on the claimant's recovery of no fault benefits. The Estate commenced this action on March 15, 2002. Under the one-year-back rule, the Estate could recover damages for losses incurred from March 15, 2001, to March 15, 2002. Alger had already passed away at this point and could not incur any loss during this year period. The plain language of the statute precludes the Estate from pursuing any damages. While Michigan's death savings statute extended the time period during which the Estate could file an action for no fault benefits, the death savings statute did not toll the one-year-back rule.

Recently, the Michigan Supreme Court held that the Michigan's minority and insanity tolling provision did not have any impact on § 500.3145(1)'s one-year-back rule. *See Cameron v. Auto Club Ins. Ass'n*, 718 N.W.2d 784 (Mich. 2006).

> By its unambiguous terms, MCL 600.5851(1) [Michigan's minority/insanity tolling statute] concerns when a minor or person suffering from insanity may "make the entry or bring the action." *It does not pertain to the damages recoverable once an action has been brought. MCL 600.5851(1) then is irrelevant to the damages-limiting one-year-back provision of MCL 500.3145(1).* Thus, to be clear, the minority/insanity tolling provision in MCL 600.5851(1) does not operate to toll the one-year-back rule of MCL 500.3145(1).

*Id.* at 789 (emphasis added). In two earlier decisions, the Michigan Court of Appeals concluded that the death savings statute tolled the one-year-back rule. *See*, *e.g.*, *Epps v. Transit Cas. Co.*, 327 N.W.2d 321, 322-23 (Mich. Ct. App. 1982); *Taulbee v. Mosley*, 338 N.W.2d 547, 548 (Mich. Ct. App. 1983). The court, however, reasoned that because the minority and insanity tolling statute tolled the one-year-back rule so should the death savings statute. *Id.* I believe that if the Michigan Supreme Court were to address this issue today, it would conclude that the death savings statute cannot toll the one-year-back rule for the same reasons that the minority and insanity tolling provision cannot toll the one-year-back rule.

Because the one-year-back rule bars the Estate's no fault claim, the parties would not have proceeded to trial and the district court would not have addressed the pre-trial issues raised by the parties. It is therefore immaterial whether the district court properly or improperly dealt with the pre-trial motions.

While Michigan's one-year-back rule bars the Estate from seeking recovery for any losses incurred outside of the year prior to filing suit, the district court's error in permitting the no fault claim to proceed to trial was harmless error. The Estate, as the appellant, suffered no harm because of the error and in fact enjoyed a windfall—it received an award on a claim which Michigan law bars. State Farm failed to appeal the district court's decision on the no fault claim and failed to appeal the jury verdict. State Farm waived any argument that it suffered harm to a substantial right. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). While the district court made a legal error, the error

does not affect the substantial rights of the parties, and therefore, the error provides no basis for

reversal.