NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0345n.06

No. 19-1467

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 11, 2020
DEBORAH S. HUNT, Clerk

TERESA GIBSON,

    Plaintiff-Appellant,

v.

MGM GRAND DETROIT, L.L.C.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff Teresa Gibson alleges gender discrimination under Title VII and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). After working at Defendant MGM Grand Detroit, LLC (MGM) for years as a plumber in the casino, Gibson applied for three different positions at MGM but was denied. Each position went to a man. She filed Equal Employment Opportunity Commission (EEOC) charges related to two of the three positions and later brought suit against MGM. The district court granted summary judgment to MGM on all of Gibson's claims. Even assuming that Gibson satisfies the prima facie case for each of the three positions, she still fails to create a genuine dispute that the legitimate, non-discriminatory reason—Gibson was not the most qualified candidate for any of the three positions—offered by MGM in all three cases was pretext. As such, we **AFFIRM** the district court.

## I. BACKGROUND

### A. Statement of Facts

Teresa Gibson alleges that she suffered gender discrimination under Title VII and ELCRA over the course of two years when MGM denied her three different promotions. First, in 2015, Gibson applied for an engineering job (Engineer I-FACE) on the Fix and Clean Everything (FACE) team in the hotel. Next, in 2016, Gibson applied for an engineering position (Engineer II-FACE) in the hotel. Soon after, Gibson applied for another engineering position (Engineer III-Journeyman) in the plumbing department. Gibson did not receive any of the three positions, and each went to a man. Jimmie Valentine and Ernest Lewis made all three hiring decisions. MGM and Gibson's union partially negotiated the job requirements for each of the positions for which Gibson applied; we begin there.

*Labor Agreement- Descriptions of the Relevant Jobs*

MGM bargained with the Detroit Casino Council and agreed on a job classification system for its maintenance and engineering employees. Maintenance trainees are classified into four different levels. Engineers are classified into three different levels with various specialties, including painting, engineering, carpentry, electrical, and plumbing. In the bargaining agreement, MGM and Detroit Casino Council agreed that union employees "shall be awarded promotional opportunities for which they are qualified before new [e]mployees are hired. The qualifications required for a position will be determined by the Employer; such determination shall not be arbitrary or capricious."

Under the labor agreement, the parties agreed that all engineers are required to have a minimum of two years' experience in building maintenance in the hospitality or service industry, or some equivalent maintenance experience. The lowest tier, Engineer I, requires a "trade related

certification or license where mandated by trade regulatory requirements." The next tier, Engineer II, requires (1) a minimum of 3-5 years building maintenance experience in the hospitality or service industry, or some equivalent experience in a different industry; (2) trade related certification or license where required;[1] (3) 2-5 years' experience in Kitchen and Refrigeration (K & R); (4) Chlorofluorocarbon (CFC) Type II or better qualification; (5) Heating, Ventilation, and Air Conditioning (HVAC) 3rd Class Refrigeration license; and (6) passage of electrical courses. The next tier, Engineer III, requires (1) a minimum of 8 years of building maintenance experience in the hospitality or service industry, or some equivalent experience in a different industry; (2) trade related certification or license where required;[2] (3) 8 years of K & R experience; (4) Type III or Universal CFC license along with a First Class Refrigeration license or unlimited refrigeration Journeyman license; (5) electric, millwright, plumbing, locksmith, or journeyman experience; and (6) completion of 1000 hours of accredited schooling.

### *Teresa Gibson*

Teresa Gibson began working at MGM in 1999 as a maintenance trainee. After completing her plumber's certification, she became an Engineer I-Plumber in 2002 or 2003. Since then, she has not completed any other training, educational, or vocational programs, but she has hands-on experience in the casino. As of 2015, she had approximately 15 years' experience working in the casino's women's bathrooms and kitchens. While not part of her every-day responsibilities, she also occasionally replaces receptacles and sockets, works in the carpentry shop, and does K & R work. Based on her experience working at MGM, Gibson also testified that, in her position as an Engineer I-Plumber, she does many, if not all, of the same things that an Engineer III-Plumber

---

[1] The agreement also notes that "[f]ive (5) years of trade experience *may* be an acceptable alternative for license requirements."

[2] The agreement also notes that "[e]ight (8) years of experience *may* be an acceptable alternative for the license requirement."

would do.  She also testified that she has worked in the hotel "[a] few times," taking occasional plumbing calls when needed.

### Hiring Managers- Jimmie Valentine & Ernest Lewis

Lewis and Valentine were the hiring managers during the relevant time period, and they jointly interviewed and declined to promote Gibson.  In 2010, MGM hired Lewis as an engineering supervisor, and he was promoted to engineering manager in 2011, a role in which he had hiring duties.  Lewis testified that the only female employee he has ever interviewed for a promotion is Gibson.  He also testified that he had previously offered a job to two female candidates, but they both declined.

Valentine started working at MGM in 2000 as an engineer.  He was quickly promoted to engineering supervisor, and, in 2003, he became an engineering manager, where he has hiring duties.  He previously promoted a female employee Amy Winton to Engineer III-Painter.  He also previously hired another female employee, Patty Logan, as an Engineer III-Plumber, and testified that Logan had a journeyman license.

### The Other Candidates- Marcus Weldon & Joseph Davis

MGM promoted Marcus Weldon to fill the Engineer I-FACE and Engineer II-FACE positions over Gibson.  Weldon worked as a housekeeper in the MGM hotel from 2007 to 2014.  In 2014, he became a Maintenance Engineer Trainee on the FACE team where he worked for approximately ten to eleven months until he was promoted to the Engineer I-FACE position in 2015.  While he was working for the hotel as a housekeeper, Weldon also worked part-time as an electrical apprentice and completed an Associate Degree of Applied Science with a certificate in electronic engineering technology at a local community college.  He was also working on getting certified in HVAC when he interviewed in 2015 for the Engineer II-Plumber position.  As a

housekeeper, Weldon regularly dealt with guests in the hotel, including delivering items to rooms for guests, and he also worked with the FACE team when the FACE team did paint projects or carpet repairs.

MGM hired Joseph Davis to fill the Engineer III-Journeyman position in 2016. Although Davis was an external candidate, he had worked for MGM previously. Davis began working as a plumber in 1996. He earned his journeyman license in 2005 and his master plumber license in 2011. Davis also held an HVAC certification.

### *First Position- Engineer I-FACE Team*

In 2015, Gibson applied for a lateral position in the hotel: Engineer I-FACE. During the interview process, Valentine and Lewis used a rating system of 1 (low) to 5 (high) to rate Gibson and Weldon in various categories: technical experience, business acumen, customer focus, interpersonal communication, teamwork, related education/training, and computer skills. Valentine and Lewis also had the two of them give written answers to several questions.

Gibson interviewed on May 19, 2015. Valentine gave her average to low marks in the various categories with 3s in business acumen, customer focus, interpersonal communication, and teamwork and 1s in technical experience and related education/training. Lewis gave her the exact same marks, with the exception of a 4 instead of a 3 for interpersonal communication. In the comments section on the interview sheet, Valentine wrote, "Has not done the job." Lewis wrote, "Not enough hotel experience or knowledge of procedures."

Weldon interviewed the same day. Valentine gave Weldon high marks with 4s in technical expertise, interpersonal communication, and related education/training and 5s in business acumen, customer focus, and teamwork. Lewis gave the exact same scores with the exception of a 5 instead of a 4 for interpersonal communication. In the written comments, Valentine wrote, "Will work

well . . . . Did well on the interview." Lewis wrote, "Great interview. Great overall knowledge of job responsibility & guest service. Continuing his education with the union and university."

MGM hired Weldon over Gibson, but Gibson did not file an EEOC charge based on that decision.

***Second Position- Engineer II-FACE Team***

Gibson applied for the Engineer II-FACE Team position in 2016. For this position, the parties provided a job description (in addition to the labor agreement requirements), and, as relevant, it requires (or prefers where indicated) (1) three years building maintenance in hospital or service industry, preferably in a hotel, resort, or industrial complex; (2) trade-related certification, with five years of experience as an acceptable alternative; (3) knowledge of mechanical, electrical, and basic guest room equipment; (4) previous experience repairing Bartech, Inncom, and NXTV systems; and (5) completion of post-secondary engineering program preferred.

Valentine and Lewis interviewed Gibson for this position on March 2, 2016, and they used the same interview sheet with a range of 1 (low) to 5 (high) for various categories. Valentine and Lewis both gave Gibson 2s in technical experience and related education/training, and they gave her 3s in business acumen, customer focus, interpersonal communication, and teamwork. Valentine commented, "[S]aid she dose [sic] not know the Hotel—But she should get the job— worked here 17 years." Lewis commented, "Candidate has never worked in a hotel and has no experience with Bartech, NXTV, Inncom."

Valentine and Lewis interviewed Weldon the same day, using the same sheet. Valentine and Lewis both gave Weldon 4s in technical experience, business acumen, teamwork, and related education/training, and they gave Weldon 5s in customer focus and interpersonal communication.

Valentine commented, "Will work well in Guest Service of the Hotel & Repair Service. Has done guest call's [sic] and did a good job at it." Lewis wrote, "Great interview. Candidate is very knowledgeable in Hotel service, engineer mechanical skills. Obtained AAS from HFCC while working with the Company. Recommended for promotion & Eng. II position."

During their depositions, Valentine and Lewis both testified consistently with their contemporaneous notes and evaluations, noting that Weldon was more qualified for a hotel position. When asked whether Gibson's 17 years of experience on the casino-side outweighed Weldon's 15 months of experience on the hotel-side as an engineer, Valentine testified, "No. Once again, I'm basing this on guest interaction. I know Marcus is seeing three, four, five guests a day at a minimum, where Teresa may speak to several people going through the casino, but it's not that type of interaction." He continued, "She doesn't have a lot of back and forth conversation with the guests on the floor, where Marcus is back and forth with the guests regularly." Valentine also testified about Weldon's teamwork, "Weldon was working with two or three other FACE team members at the time and they had to work as a team . . . to handle the guest calls and to learn all the systems, so he had more of that smaller, more intimate connection with the" FACE team. Later in the deposition, he also testified that Weldon had training on the mini bars, the television systems, and the phone systems.

Lewis testified that, when he asked Gibson if she had any skill sets for the hotel, Gibson said no. Lewis also testified that he had offered Gibson opportunities to work or shadow in the hotel to enhance her skill sets and learn the hotel, but, again, she refused. Finally, he testified that Gibson was not qualified for this position, "She did not have—possess the hospitality service within the hotel for that position, nor did she have the skill set to do that . . . ."

Gibson testified, during her deposition, that she believed that Weldon was more qualified than her for the Engineer II-FACE position.

### Third Position- Engineer III-Journeyman

Gibson applied for the Engineer III-Journeyman position at the same time that she applied for the Engineer II-FACE position, and Valentine and Lewis interviewed her for both at the same time. As such, her ratings are the same as previously noted in the last section. Valentine commented, "Dose [sic] not have a Journeyman license." Lewis commented, "Candidate doesn't have journey man's plumbers license. (Required for position)." The position description specifically noted, "Journeyman license required."

Valentine and Lewis also interviewed and then hired Joseph Davis for this position. Lewis gave Davis 4s for business acumen, interpersonal communication, and teamwork and 5s for technical expertise, customer focus, and related education/training. Valentine gave the same scores, with the exception of a 5 instead of a 4 for business acumen. Lewis commented, "Great candidate, very knowledable [sic]." Valentine commented, "Would work well with the team."

Again, Valentine and Lewis testified consistently with their contemporaneous notes. During his deposition, Lewis noted that a journeyman's license was required for the position. Valentine said the same, "[A]s far as the [Engineer III-Journeyman position], she didn't have the journeyman license." He testified that, "If they don't present me with a journeyman's license, I'm not going to put down to proceed forward because they don't have it." Valentine also explained that, while the labor agreement says that experience *may* be a substitute for a journeyman's license, it was not in this case based on the job description and qualifications for this specific position.[3]

---

[3] Valentine's testimony is also consistent with the wording of the labor agreement. It states that "[e]ight (8) years of experience may be an acceptable alternative for the license requirement." Furthermore, the agreement also states that "[t]he qualifications required for a position will be determined by" MGM.

**B. Procedural History**

On March 21, 2016, Gibson filed a charge with the EEOC. She wrote:

I began my employment with [MGM] on May 28, 1999. I am currently employed as an Engineer One.
On February 1, 2016, and again on February 26, 2016, I applied two separate positions. One position for an Engineer Two and the second one Engineer Three. The first position was awarded to a less senior[,] less qualified employee; the second was awarded to an outside employee. I have the most seniority.
I believe I was denied promotional opportunities due to my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

She made no mention of the Engineer I-FACE position in the charge.

On May 25, 2017, Gibson filed a complaint against MGM in state court in Wayne County, Michigan, alleging violations of Title VII and ELCRA. MGM properly removed the case to federal district court.

On May 21, 2018, MGM moved for summary judgment. Initially, the district court denied MGM's motion. After this Court released our opinion in *McDaniels v. Plymouth-Canton Cmty. Sch.*, 755 F. App'x 461 (6th Cir. 2018), however, the district court asked for briefing on whether that decision should change its analysis on summary judgment. After allowing the parties to brief the issue, the district court reversed itself and granted summary judgment in favor of MGM.

For the first position (Engineer I-FACE), the district court held that her claim "fails on exhaustion grounds under Title VII, and on the merits under both Title VII and ELCRA." For the second position (Engineer II-FACE), the district court held, "Since Plaintiff has raised no genuine issue of material fact as to the pretextual character of MGM's stated rationale for its decision to award the 'Engineer II – FACE Team' position to Weldon, MGM is entitled to summary judgment on Plaintiff's Title VII and ELCRA claims . . . ." For the third position (Engineer III-Journeyman), the district court found that "Plaintiff has offered no evidence on which a reasonable jury could

find that this proffered explanation[—Davis was more experienced and had a journeyman's license—]was pretextual" and, thus, granted summary judgment to MGM.

Gibson moved for reconsideration on February 7, 2019, but the district court denied that motion on April 10, 2019. Gibson, then, filed her notice of appeal on April 29, 2019.

## II. LAW

### A. Standard of Review

"We review the district court's grant of summary judgment de novo." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "[d]efendant bears the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Plaintiff's claims." *Romans*, 668 F.3d at 835. A genuine dispute exists when a plaintiff presents "sufficient evidence from which a jury could reasonably find in [her] favor." *Id.* When reviewing a grant of summary judgment in favor of the defendant, we draw all reasonable inferences in favor of the plaintiff. *Id.*

"Normally, we review a district court's decision regarding a motion for reconsideration for an abuse of discretion. Where, however, as here, the motion seeks reconsideration of a summary-judgment grant, we review the decision de novo as though we were reviewing the summary judgment grant." *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F. App'x 654, 659 (6th Cir. 2007).

### B. Title VII/ELCRA Framework

Under Title VII, employers cannot "fail or refuse to hire . . . any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Before filing a lawsuit based on discrimination

under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010).

In a failure to promote case based on circumstantial evidence, a plaintiff must first show a prima facie case of discrimination by proving four elements: "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

If a plaintiff successfully establishes the prima facie case, then "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (quotations omitted). A plaintiff can then "refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (quotations omitted).

ELCRA claims "are analyzed under the same evidentiary framework used in Title VII cases." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012) (quotations omitted). Under ELCRA, however, "mere disproof of an employer's proffered 'nondiscriminatory' reason is insufficient to survive summary disposition, unless such disproof also raises a triable question of discriminatory motive, not mere falsity." *Lytle v. Malady*, 579 N.W.2d 906, 918 (Mich. 1998).

## C. *McDaniels*

Because the district court reversed its decision based on this Court's decision in *McDaniels v. Plymouth-Canton Cmty. Sch.*, 755 F. App'x 461 (6th Cir. 2018), it warrants some initial discussion. In *McDaniels*, the defendant, Plymouth-Canton Community Schools (PCCS) organized its maintenance employees into a three-tier system with custodians, assistant head maintenance custodians, and plant engineers. *Id.* at 463. PCCS had one or two female plant engineers, but the current maintenance director had never actually hired a female plant engineer. *Id.* at 465.

The plaintiff alleged sex discrimination because she was passed over three times when she applied to be a plant engineer, each time in favor of a man. *Id.* at 463. By agreement between the union and PCCS, maintenance employees could take a series of courses that would help during promotion decisions. *Id.* at 463-64. The plaintiff had taken every single one of those courses except one. *Id.* at 464. For one of the positions, PCCS hired someone who had only worked for them for one year, *id.* at 466, whereas the plaintiff had worked for PCCS for approximately 16 years, *id.* at 464.

After the plaintiff established her prima facie case, PCCS offered two legitimate, nondiscriminatory reasons for choosing men for the plant engineer positions: (1) the men had "demonstrated hands-on experience to a greater degree than" the plaintiff and (2) "some of the hiring decisions were motivated by the stronger familiarity and personal relationships that members of the hiring committees had with the successful candidates." *Id.* at 469.

The Court noted that "an employer may give greater weight to some qualifications than others and may look to qualifications that are not expressly articulated in the job description." *Id.* at 470. The Court ultimately concluded that the plaintiff had failed "to show that a reasonable jury

could find that [the d]efendant's articulated non-discriminatory motive was pretext for gender discrimination." *Id* at 472.

## III. ANALYSIS

### A. First Position- Engineer I-FACE Team

Gibson does not dispute that the district court correctly dismissed her Title VII claim for the Engineer I-FACE position based on her failure to include it in her EEOC charge, so we deal only with her ELCRA claim on appeal. Furthermore, MGM does not dispute that Gibson met the prima facie case for this position; as such, we examine whether the district court correctly determined that Gibson has failed to present sufficient evidence from which a jury could reasonably find in her favor on the issue of pretext. *See Romans*, 668 F.3d at 835. Gibson has not presented sufficient evidence to rebut the legitimate, nondiscriminatory reason offered by MGM.

MGM argues that it hired Weldon over Gibson for the Engineer I-FACE position because MGM believed that Weldon was more qualified for the position. Gibson responds that she had 16 years of experience as a plumber in the casino versus Weldon's six months[4] of experience working as a maintenance engineer trainee in the hotel. Gibson also argues that Valentine's and Lewis' failure to promote women in the past is evidence that the proffered reason was pretext.

Because we do not have a specific job description for this position, we cannot know exactly what all the qualifications were for the Engineer I-FACE team position, but, in *McDaniels*, we held that employers could look at qualifications not expressly articulated in the job description and give greater weight to some qualifications over others. *McDaniels*, 755 F. App'x at 470. So, even if we assume that the job description did not include anything about hotel experience, there is nothing improper about MGM considering hotel experience if it can prove that it actually

---

[4] Gibson fails to explain where she got this number, and the evidence shows that Weldon had worked as a maintenance trainee for approximately ten to eleven months.

considered that experience at the time and is not offering it now as a pretextual reason for hiring Weldon over Gibson.

Looking at their contemporaneous notes, it is clear that Valentine and Lewis considered hotel experience and continuing education in their hiring decision. The notes from the interviews show that they valued the hotel experience of Weldon, who also had years of experience dealing with guests on the hotel-side through his work in housekeeping. Meanwhile, Valentine and Lewis noted that Gibson did not have hotel experience. Furthermore, Gibson has offered no evidence to demonstrate that Valentine and Gibson did not consider hotel experience important in the hiring decision, *Lytle*, 579 N.W.2d at 918, and Gibson testified that she had only worked in the hotel a few times. In addition to the hotel experience, Lewis also noted that Weldon was continuing his education while Gibson had not taken classes since 2003. Accordingly, Gibson has failed to offer sufficient evidence to rebut the legitimate, non-discriminatory reason offered by MGM.

Furthermore, Gibson's repeated claim that Valentine and Lewis had never promoted a female before is contradicted by the evidence. Valentine specifically testified that he was involved in the promotion of Amy Winton to Engineer III-Painter. Additionally, both Valentine and Lewis testified that they offered other positions to female applicants. Besides offering conclusory allegations in brief after brief, Gibson has failed to rebut that testimony.

We, therefore, affirm the district court in its grant of summary judgment on the claims related to the Engineer I-FACE team position.

**B. Second Position- Engineer II-FACE Team**

MGM does not argue that Gibson failed to meet the prima facie case, and, instead, it offers a legitimate, non-discriminatory reason for hiring Weldon over Gibson for the second time:

Weldon was again more qualified than Gibson. Gibson fails to offer sufficient evidence to rebut this reason.[5]

Gibson cannot show that the proffered reason "has no basis in fact." *Grace*, 521 F.3d at 670. On the contrary, she herself testified that she believed that Weldon was more qualified for the Engineer II position.

Furthermore, she cannot show that the proffered reason "did not actually motivate the defendant's challenged conduct[] or [] was insufficient to warrant the challenged conduct." *Grace*, 521 F.3d at 670. The position description mentions qualifications or background knowledge that Weldon had that Gibson did not. Specifically, the position description called for hotel experience, knowledge of basic guest room equipment, and experience with the tv, internet, and phone systems. Weldon had that experience and background while Gibson did not, as Gibson admitted. Moreover, the contemporaneous notes of the interviews show that Valentine and Lewis considered just that during the interview process, with Lewis specifically commenting on Gibson's lack of hotel experience and experience with the tv, internet, and phone systems. Valentine also noted that Gibson said she did not have hotel experience during the interview. On the other hand, Valentine and Lewis both noted during their interview with Weldon that he had hotel experience. Finally, Gibson has failed to persuade us that this lack of hotel experience was an insufficient reason to warrant hiring Weldon over Gibson.

As we did in *McDaniels*, we find that Gibson "is unable to show that a reasonable jury could find that [MGM's] articulated non-discriminatory motive was pretext for gender discrimination under any of the three approaches," *McDaniels*, 755 F. App'x at 472, and we affirm

---

[5] Because the analyses under ELCRA and Title VII are almost identical, *Ondricko*, 689 F.3d at 652, we treat them like singular claims.

the district court's grant of summary judgment to MGM on Gibson's claims related to the Engineer II position.

### C. Third Position- Engineer III-Journeyman

Finally, as to the Engineer III position, MGM again argues that it hired Joseph Davis because he was more qualified than Gibson.[6]  Gibson fails to rebut that legitimate, non-discriminatory reason and offers almost no argument on the issue.  Both Valentine and Lewis noted that Gibson did not have a journeyman license for plumbing during the interview.  Meanwhile, the interview questionnaires show that Davis had journeyman *and* master plumber licenses.

In her brief, Gibson does not argue that she was more qualified than Davis, but instead focuses on the collective bargaining agreement, which states that MGM should promote from within if there is a qualified candidate.  Even if true, however, that does not rebut that Davis was more qualified.  Gibson may have some claim with the union or some other cause of action, but it does not create a genuine dispute on the issue regarding whether Davis was more qualified than her for the Engineer III position.

Accordingly, we affirm the district court's grant of summary judgment on Gibson's claims related to the Engineer III position.

### IV.  CONCLUSION

Because Gibson has failed to create a genuine dispute regarding MGM's proffered legitimate, non-discriminatory reasons for hiring Weldon and Davis over Gibson, we **AFFIRM** the district court's grant of summary judgment to MGM.

---

[6] MGM also argues that Gibson was not even qualified for the job and that her case should fail at the prima facie stage. Because the pretext analysis is so straightforward, we assume, without deciding, that Gibson was qualified for the position.